# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CEK GROUP LLC<br><br>              Plaintiff,<br>  v.<br><br>UNITED STATES,<br><br>              Defendant,<br><br>  and<br><br>M&B METAL PRODUCTS COMPANY, INC.,<br><br>              Defendant-Intervenor. | Court No. 22-00082<br><br>Before: Jane A. Restani, Judge |

## REPLY OF PLAINTIFF
## CEK GROUP LLC
## TO RESPONSES OF DEFENDANT AND
## DEFENDANT-INTERVENOR

 

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
    Counsel for Plaintiff

Dated: February 15, 2023

## Table of Contents

Table of Contents...................................................................................................i

Table of Authorities............................................................................................ ii

I.  INTRODUCTION AND SUMMARY OF ARGUMENT............................1

   A.  Introduction .................................................................................1

   B.  Summary of Argument.................................................................1

II. ARGUMENT..................................................................................................2

   A.  The Court May Evaluate Whether There was a Sufficient Allegation to Justify Initiation...........................................................2

       1. CEK May Properly Challenge Initiation of the Investigation..................................................................2

       2. The Allegation was Insufficient to Support Initiation ................4

   B.  The Determination is Not Supported by Substantial Evidence ............7

       1. CBP's Application of Adverse Inferences is not Supported ..................................................................7

       2. CBP's Evasion Determination is not Supported by Substantial Evidence of Record ...................................................8

       3. CBP Made Numerous Significant Procedural Errors ................8

III. CONCLUSION..............................................................................................11

Table of Authorities

*Court Cases*

Al Tech Specialty Steel Corporation v. United States, 575 F.Supp. 1277 (Ct. Int'l Trade 1983) ............................................................5,6

Donavan v. Federal Clearing Die Casting Co., 655 F.2d 793 (7th Cir. 1981)................................................................................................6

Marshall v. Barlow's, Inc., 436 U.S. 307, 320-21, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978) ..............................................................6

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) .................5

United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) .........................................................................5

United States v. Merritt, 695 F.2d 1263, 1268 (10th Cir.1982), cert. denied, __ U.S. __, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983) ..................................................................................................5

Weyerhaeuser Co. v. Marshall, 592 F.2d 373 (7th Cir.1979) .........................6

*Statutes and Regulations*

Section 773(b) of the Trade Agreements Act of 1979 (codified at 19 U.S.C. §1677b(b)) .......................................................................5

19 U.S.C. §1517(b)(1) ................................................................................3

*Other*

Rule 56.2 of the Rules of the U.S. Court of International Trade.....................1

I.   INTRODUCTION AND SUMMARY OF ARGUMENT

   A.   *Introduction*

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade and the Court's Amended Scheduling Order of July 1, 2022, Plaintiff CEK Group LLC, respectfully submit this reply to the Responses of defendant United States of America and defendant-intervenor M&B Metal Products Co., Ltd. to the Motion and Memorandum presented by plaintiff. As demonstrated below, the arguments submitted by the defendant and defendant-intervenor are unavailing. This matter should be remanded with instructions that this matter be terminated with a finding of no evasion.

   B.   *Summary of Argument*

- Plaintiff can challenge the initiation of the EAPA investigation based on an insufficient allegation and the Court may properly consider such challenge.

- The allegation submitted by the complainant was insufficient to justify initiation of the investigation. The allegation did not contain information sufficient to find a reasonable suspicion of evasion of an antidumping duty order.

1

- While CPB has great discretion in conducting an investigation, such discretion is not unlimited and CPB cannot create a situation of non-cooperation by asking overbroad and unnecessary questions.

- CPB's evasion determination is not supported by substantial evidence.

- CBP made numerous significant procedural errors including imposing limitations on filings that are not based on regulations or procedures established through notice and comment.

II. **ARGUMENT:**

As an initial matter, plaintiff submits that the responses of defendant and defendant-intervenor do not overcome the detailed factual arguments presented in plaintiff's 56.2 motion and memo in support. Plaintiff incorporates its 56.2 motion and memo in support by reference and continues to rely upon such documents.

    A. ***The Court May Evaluate Whether There was a Sufficient Allegation to Justify Initiation***

        1. *CEK May Properly Challenge Initiation of the Investigation*

In its defendant United States' response of January 13, 2023[1] (hereafter "DR") at pages 10 to 13, the defendant argues that CEK's initiation challenge was contrary to the statutory design of EAPA investigations. The defendant-intervenor did not

---

[1] The response is dated January 13, 2022, but this would appear to be a harmless typographical error.

2

address this issue in its response of January 13, 2023 (hereafter "DIR").

The gravamen of defendant's argument is that since the statute does not provide an opportunity for the "target" to comment on the initiation at the time of the initiation, the target cannot readily challenge the initiation. In contrast, the defendant argues that it must initiate even if the issue is close because the alleger could bring a court action to compel the United States to initiate an action. (DR at 13)  If, as admitted by the alleger can challenge an initiation determination, so to can the target of an EAPA action.

Further, while the standard for initiation is low, it is not non-existent. Plaintiff submits that the fact that it cannot "challenge" the initial allegation or initiation at the time of initiation of the investigation is not relevant to the question as to whether or not it can be challenged. As admitted by the defendant in the next statement, the statute does not provide unlimited discretion for the initiation of an investigation. Rather, the statute makes it clear that an investigation can only be undertaken if there is reasonable suspicion. 19 U.S.C. §1517(b)(1) clearly states that CBP can only initiate an investigation if the allegation reasonably suggests evasion. The agency, in this case CBP, was under an obligation to evaluate the information and determine whether the allegation contained a "reasonable suggestion" of evasion. As discussed in our memo in support of the 56.2 motion, and as discussed below, the allegation does not contain a reasonable suggestion of evasion.

3

### 2. The Allegation was Insufficient to Support Initiation

In the DR at 13 -23 and in the DIR at 7 – 11, the defendant and defendant intervenor argued that the allegation "reasonably suggests" evasion and thus the initiation was proper.  In its Memorandum in support of the 56.2 Motion, Plaintiff detailed the absence of any evidence in the **allegation** of transshipment.  Plaintiff submits that defendant and defendant-interveror's response do not overcome those arguments. Defendant's response is to primarily fall back on the concept that "once a bad person, always a bad person".  Under this theory, any entity who has once been alleged to have a problem, will automatically be the potential subject of an EAPA action.   In particular, each situation, which were not detailed in the allegation, is different and not susceptible to summary conclusions.  The allegation consists of unsupported allegations and allegations based on conduct of persons and entities not involved with the targets.

Furthermore, the allegation must be evaluated at the time that it was filed, not taking into account other information which may or may not support the allegation. In this case, for example at footnote 7, defendant not only tries to bring in information in support of the allegation which was not part of the allegation, it brings in information which was not, and is not, part of the administrative record.  The EAPA process already provides a limited ability for plaintiff to address claims made against it "in secret", this should not be compounded by allowing defendant to

engage in an *ex post facto* justification by bringing in information not previously provided or which arose after initiation, or even completion of the investigation.

Critically, the standard applied to determine whether to initiate is not "sole discretion" it is reasonable suspicion.  Plaintiff disagrees with defendant's discussion of this standard and submits that this discussion does not fully take into account the use of this standard in the context of trade cases.  Specifically, the Courts have addressed the concept of "reasonable suspicion" in the context of trade cases. In *Al Tech Specialty Steel Corporation v. United States,* 575 F.Supp. 1277 (Ct. Int'l Trade 1983) the court examined the phrase "reasonable grounds to believe or suspect" from Section 773(b) of the Trade Agreements Act of 1979 (codified at 19 U.S.C. §1677b(b)) and applied the concept of "reasonable suspicion" in evaluating this phrase.   The Court stated in relevant part:

> There is, however, an instructive body of law stemming from the Supreme Court's decision in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), wherein courts have grappled with the slippery concept of "reasonable suspicion." The upshot has been the formulation of detailed guidelines for determining whether vel non such suspicion exists in a given case. The teaching of *Terry* and its progeny is that in order for reasonable suspicion to exist there must be "a particularized and objective basis for suspecting" the existence of certain proscribed behavior, taking into account the totality of the circumstances—the whole picture. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); United States v. Merritt, 695 F.2d 1263, 1268 (10th Cir.1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983). Elaborating on these criteria the Supreme Court explained in *Cortez*:
>
> > The idea that an assessment of the whole picture must yield a

> particularized suspicion contains two elements, each of which must be present .... First, the assessment must be based upon all of the circumstances....
> The process does not deal with hard certainties, but with probabilities.... Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field ....
> The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual ... is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in Terry v. Ohio, supra, said that "[t]his demand for specificity in the information upon which ... action is predicated is [this Court's] central teaching ...."
>
> *Id*. 449 U.S. at 418, 101 S.Ct. at 695 (emphasis in original). See also Marshall v. Barlow's, Inc., 436 U.S. 307, 320-21, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978) (probable cause in the administrative law context is established by specific evidence).
> *Al Tech* at 1280-81

The question facing the *Al Tech* court was whether there was a reasonable suspicion of below cost sales. In rejecting the allegation of below cost sales, the *Al Tech* court considered certain press releases and European Commission papers and public summaries of responses to antidumping duty questionnaires. The Court found that the evidence was too remote and generalized to support the allegation. The Court summed up the standard when it stated:

> In sum, absent a *specific* and *objective* basis for suspecting that a particular foreign firm is engaged in home market sales at prices below its cost of production, section 773(b)'s threshold requirement of "reasonable grounds to believe or suspect" has not been satisfied. See *Federal Clearing Die Casting Co., 655 F.2d at 797-98; Weyerhaeuser Co. v. Marshall*, 592 F.2d 373, 377 (7th Cir.1979).
> *Al Tech* at 1282. (Emphasis in original)

6

Plaintiff submits that the information in the EAPA allegation consists of generalities and unsupported allegations and does not contain *specific* and *objective* bases for suspecting evasion.  Plaintiff submits that the discussions in its 56.2 memorandum regarding the allegation, when read in the context of the standard for "reasonable suspicion", and limited to the actual allegation, demonstrates an absence of evidence providing a reasonable suspicion of evasion.

### B.   *The Determination is Not Supported by Substantial Evidence*

#### 1.   *CBP's Application of Adverse Inferences is not Supported*

In the DR at 24-31 and in the DIR at 17-21, the defendant and defendant-intervenor argued that the application of adverse inferences to the plaintiff was appropriate.  The gravamen of this argument is that the plaintiffs did not fully and completely cooperate with every request of CBP and that CBP has absolute discretion to ask whatever it wishes.   In its memo in support of the 56.2 motion, plaintiff explained that the CBP requests were overbroad and sought significant information not necessary to make a determination as to evasion.  Rather such information was sufficiently burdensome such that it would result in a finding of non-cooperation and the application of adverse inferences. While plaintiff acknowledges that the respondents cannot control the questions asked by CBP, and while CBP has great discretion, such discretion is not unlimited.  In this matter,

CBP's conduct, when analyzed as a whole went too far and thus AFA is not appropriate.

    2. *CBP's Evasion Determination is not Supported by Substantial Evidence of Record*

In the DR at 31 to 37, the defendant argued that CBP's evasion determination was supported by substantial evidence of record. The DIR did not directly address this issue. Much of this information was that contained in the allegation. As discussed above, the allegation did not reach the lower standard or "reasonable suspicion" and thus necessarily does not reach the higher standard of "substantial evidence". Plaintiff relies upon the significant arguments made in the memo in support of its motion for judgment under Rule 56.2

    3. *CBP Made Numerous Significant Procedural Errors*

In the DR at 37 to 45 and in the DIR at 15-17, the defendant and defendant-intervenor argue that CBP did not make significant procedural errors. Plaintiff disagrees. In particular, as discussed in the memorandum in support of the motion for judgment under Rule 56.2, CBP rejected videos or otherwise refused to accept them for reasons not specified in the regulations or published procedures. For example, at page 38 of the DR, the defendant admitted:

> On April 29, CBP received a physical disk from NWH, which included the March 23–25, April 13 & 14, and April 27 videos, as well as additional videos. See TRLED Determination at 31. Although the disk had been mailed on **March 19, 2021**, prior to the April 2 deadline, the EAPA office did not receive it until April 29. Id. at 33. **CBP rejected**

> **the submission as untimely** and explained that its offices were closed and CBP's mail was processed centrally, which would result in delays. See Rejection of NWH Video Files (P.R. 63).
> DR at 38

The submission was "untimely" because the CBP had implemented unstated procedures which results in a 40-day delay between mailing and receipt. CBP cannot create "secret" internal protocols which delay receipt of materials and then reject such materials as late because the receipt was delayed.

CBP also rejected attempts to submit videos by a file sharing platform, requiring that they be submitted by e-mail. The difficulty with this is that these limitations, requiring that submissions be made solely by e-mail, are not based on any regulation or procedure adopted by a notice and comment procedure. Further, such requirement greatly limits the size and resolution of any filing. These size and related filing limitations impermissibly hampered plaintiff in making its case as such requirements impermissibly limited the nature of evidence to be supported.

This is not mere speculation, in its determination, CBP stated:

> The March 23-25 surveillance videos submitted by NWH are grainy and appear to have a low resolution. Most videos are taken from a fixed point in the factory, and show certain hanger making machines. The video titled "NWH NFI factory area out to in" takes the viewer from outside the industrial zone to inside the factory, and shows where the surveillance camera is located, about the halfway point of the factory where one half appears to be hanger making machines and the other half used for inventory, strut attaching and cape attaching. The surveillance videos show machines closer to the camera are more clear, while machines further away, and even on the opposite side of the factory are not clear, and present a grainy image.

9

>\* \* \*
> We have not summarized all videos because they are generally similar, but the quality of the videos does not allow us to ascertain hanger production throughout the factory.
>(PD 70 at 31-32 )

The CPB's rejection of the data (and the absence of any regulations regarding the procedures and limitations on the submission of data), and then taking adverse inferences because the rejected data was not provided is an abuse of discretion.  CPB should have permitted the submission of all of the data sought to be submitted and cannot draw adverse inferences because data was "missing" on "unclear" or "grainy" because CBP would not allow submission of this information.

Furthermore, as such information was not of evidence, CPB cannot draw inferences as to whether or not such information would have fully supported plaintiff's claims.

Finally, with respect to public information and public summaries, the failure of CPB to provide sufficient public summaries prejudiced plaintiff by depriving plaintiff of a "roadmap" as to CBP's thinking process and thus depriving plaintiff the opportunity to provide focused responses addressing allegations.  For example, the failure to require alleger to provide a public version of the market research report deprived plaintiff of the opportunity to see the numerous fatal flaws in this report until the filing of this court action and deprived plaintiff the opportunity to challenge the initiation in the underlying administrative proceeding. Such deprivation

significantly increased the costs for plaintiff and limited its ability to fully respond.

## III. CONCLUSION

CEK respectfully submits that the counter-arguments presented by defendant and defendant-intervenor and that this matter should be remanded to CBP with instructions that CBP terminate the EAPA investigation as improvidently initiated.

Respectfully submitted,

/s/ David Craven
David Craven

Counsel to *CEK Group*

Dated: February 15, 2023